Joseph Louis TOVAR, Appellant,

v.

The STATE of Texas.

Nos. 1031–97, 1032–97.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 28, 1998.

Luis R. Vera, Jr., Michael D. Bernard, San Antonio, for appellant.

Roderick B. Glass, Asst. Dist. Atty., San Antonio, Matthew Paul, State's Atty., Austin, for State.

### OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge, delivered opinion of the Court in which McCORMICK, Presiding Judge, and BAIRD, MEYERS, MANSFIELD, KELLER, PRICE, HOLLAND and WOMACK, Judges, joined.

Appellant, former president of the Somerset Independent School Board, was indicted for two offenses involving violations of the Open Meetings Act ("the Act"). V.T.C.A. GOV'T CODE, § 551.144. The first indictment alleged that appellant knowingly participated in a special closed meeting of the school board in violation of the Act. The second indictment alleged that appellant knowingly called and aided in calling and organizing a special closed meeting of the school board in violation of the Act. A jury found appellant guilty as charged in both indictments. In each case, appellant's punishment was assessed at a term of six months incarceration in the Bexar County Jail and a $500 fine; however, the court suspended imposition of appellant's sentences and placed him on com-

munity supervision for a period of six months.[1] On direct appeal, appellant's convictions were affirmed by the court of appeals. *Tovar v. State*, 949 S.W.2d 370 (Tex. App.—San Antonio 1997). We granted appellant's petition for discretionary review with regard to:

> Whether the Court of Appeals erred in affirming the convictions based upon a conclusion that a public official can be found guilty of violating the Open Meetings Act, when the official is unaware that the Meeting is not permitted under the Act[?]

## I. PERTINENT FACTS

At trial, appellant requested the following jury instruction: "The defendant must know that the closed meeting is not permitted under the Texas Open Meetings Act." The trial court denied the requested instruction, but instructed the jury as follows:

> If you find from the evidence beyond a reasonable doubt that ... Joe Tovar ... did knowingly call or aid in calling or organizing a special closed meeting ... which was not permitted under Chapter 551 of the Government Code ... in that none of the above exceptions apply ... then you will find Joe Tovar, guilty of Violation of [the] Open Meetings Act as charged in the indictment.[2]

On appeal, appellant argued that the trial court erroneously refused to instruct the jurors that appellant could be found guilty only if they found that he called or participated in the special closed meeting knowing that the meeting was not permitted by the Act. Appellant argued that the offense was either result oriented or circumstance oriented but not nature oriented.[3] Thus, appellant contended that the mental state requirement for the commission of the offense should refer to

either the result of his actions or the circumstances surrounding his actions, and not to the nature of his conduct.

## II. COURT OF APPEALS HOLDING

The court of appeals found that (1) the Act places a burden upon governmental officials to conduct open meetings, (2) the action of conducting a closed meeting is not inherently innocent and thus not a circumstance oriented crime; (3) *Tovar v. State*, 949 S.W.2d 370 (Tex.Crim.App.1997), is not dispositive authority for the proposition that section 551.144 is a result oriented offense; (4) the plain language of section 551.144 indicates that it is a nature-of-the-conduct offense; (5) the Act does not provide a good faith exception or a mistake of law defense; and (6) a good faith exception would conflict with the Texas Penal Code's prohibition of a mistake of law defense. *Tovar*, 949 S.W.2d at 372–374. Thus, the court held, "In light of the Act's general rule that all meetings are open, the plain wording of section 551.144, and the absence of a good faith exception, we find that section 551.144 is a conduct oriented offense and that the jury instruction correctly reflected the State's burden of proof." *Tovar*, 949 S.W.2d at 374.

## III. STATE'S CLAIM

■ The State contends that section 551.144, by its plain language, is a nature-of-the-conduct oriented offense; that is, the conduct of calling, aiding, or participating in a closed meeting is an offense. Moreover, the State argues that adherence to the plain meaning of section 551.144 follows the purpose of the Act which is to safeguard the public's interest in knowing the workings of its governmental bodies and that the Act places the burden upon public officials to find

---

1. Since appellant was accused of a misdemeanor involving official misconduct, jurisdiction was proper in the district court. Article 4.05, V.A.C.C.P.

2. This is the language which was used in the jury charge in Cause Number 95–CR–1364. Similar language was used in Cause Number 95–CR–1363 except that it was alleged that the defendant did knowingly participate in a special closed meeting.

3. Section 6.03 of Title Two of the Texas Penal Code delineates three conduct elements which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim.App.1989). The provisions of Titles One, Two, and Three of the Penal Code apply to offenses defined by other laws, unless the statute defining the offense provides otherwise. V.T.C.A. PENAL CODE, § 1.03(b).

an exception for the closed meeting or face criminal penalties.

## IV. ANALYSIS

As a general rule, the Act requires every regular, special, or called meeting of a governmental body to be open to the public. V.T.C.A. Gov't Code, § 551.002. However, the Act also provides exceptions to the general rule in that it allows members of a governmental body to have closed meetings under certain circumstances. V.T.C.A. Gov't Code, Subchapter D. Exceptions to Requirement that Meetings be Open, §§ 551.072–551.084.

Section 551.144 of the Act makes it an offense for a member of a governmental body to call, aid, close, or participate in a closed meeting where such meeting is not permitted under the Act. It provides:

(a) A member of a governmental body commits an offense if a closed meeting is not permitted under this chapter and the member knowingly:

(1) calls or aids in calling or organizing the closed meeting, whether it is a special or called closed meeting;

(2) closes or aids in closing the meeting to the public, if it is a regular meeting; or

(3) participates in the closed meeting, whether it is a regular, special, or called meeting.

(b) An offense under Subsection (a) is a misdemeanor punishable by:

(1) a fine not of not less than $100 or more than $500;

(2) confinement in the county jail for not less than one month or more than six months; or

(3) both the fine and confinement.

In order to convict appellant, the jury charge in this case only required the jury to find that appellant acted knowingly with regard to calling, aiding in calling or organizing, or participating in the special closed meeting. The jury charge did not require the jury to find that appellant possessed any mental state with regard to the special closed meeting not being permitted under the Act.

■ If the meaning of statutory text, when read using established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. *Schultz v. State*, 923 S.W.2d 1, 2 (Tex. Crim.App.1996), citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). Moreover, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." V.T.C.A. Gov't Code § 311.011(a); *see* V.T.C.A. Penal Code § 1.05(b) (Section 311.011 of the Government Code applies to the Penal Code). Resort to legislative history is permissible only if the statute is ambiguous or would lead to absurd results. *Schultz*, 923 S.W.2d at 2.

Under section 551.144, the dependent clause [4] "a closed meeting is not permitted under this chapter and the member knowingly ..." is connected to the independent clause "a member of a governmental body commits an offense" by the subordinating conjunction "if." *See* H. RAMSEY FOWLER, THE LITTLE, BROWN HANDBOOK, 108–137 (1980). The dependent clause contains two subclauses which are connected to each other by the coordinating conjunction "and." Each subclause of the dependent clause has a separate subject and predicate. *Id.* "A closed meeting" is the subject of the first subclause of the dependent clause; whereas, "the member" is the subject of the second subclause. *Id.* The second subclause has three predicates which are connected to each other by the coordinating conjunction "or." *Id.* The adverb "knowingly" contained in the second subclause immediately precedes and modifies the verbs calls, aids, closes, and participates. *Id.* Hence, it is evident that the second subclause is independent of the first subclause and that the adverb "knowingly" only modifies the verbs which it precedes in the second

---

4. A clause is a group of related words that has a subject and a predicate but is not a sentence. A sentence is a group of words that expresses an idea and is punctuated as an independent unit. A dependent clause is a clause that could not be a sentence. An independent clause is a clause that could be a sentence. MAXINE HAIRSTON ET AL., THE SCOTT, FORESMAN HANDBOOK FOR WRITERS, 216 (1988).

subclause. *Id.* The statute does not specify any other culpable mental state; thus, it does not provide a culpable mental state with regard to the element that a closed meeting is not permitted under the Act. Accordingly, we hold, based upon the plain language of the section 551.144 and the rules of grammar and common usage, a member of a governmental body can be held criminally responsible for his involvement in the holding of a closed meeting which is not permitted under the Act regardless of his mental state with respect to whether the closed meeting is permitted under the Act.

▊ Our holding is consistent with both the Act's purpose of safeguarding the public's interest in knowing the workings of its governmental bodies and the Penal Code's prohibition of mistake of law defenses. *Cox Enterprises, Inc. v. Board of Trustees of the Austin Independent School District,* 706 S.W.2d 956, 959 (Tex.1986); V.T.C.A. Penal Code § 8.03 ("It is no defense to prosecution that the actor was ignorant of the provisions of any law after the law has taken effect.").The Act places a duty upon members of governmental bodies to hold open meetings and a concomitant duty to find an exception to the general rule if they desire to have a closed meeting. Neglect of this duty will subject a member of a governmental body to criminal sanction. *Cf. Schultz v. State,* 923 S.W.2d 1, 4 (Tex.Crim.App.1996) (The offense of abandoning or endangering a child can dispense with a requirement of awareness of danger because a person subject to the offense has already assumed a duty to act reasonably and it is the neglect of this duty that is criminalized).

Further, the instant case is distinguishable from other cases where we have required proof of a culpable mental state where one is lacking. *McQueen,* 781 S.W.2d 600, 603–604 (Tex.Crim.App.1989) citing *McClain v. State,* 687 S.W.2d 350, 354 (Tex.Crim.App.1985) (Court required proof of culpable mental state even though statute did not provide a culpable mental state with regard to the circumstantial element); *Lynch v. State,* 643 S.W.2d 737 (Tex.Crim.App.1983); *see* V.T.C.A. Penal Code, § 6.02(c) (if culpable mental state is not provided but one is nevertheless required, intent, knowledge, or recklessness suffices to establish criminal responsibility). The cases in which we have imposed a culpable mental state upon a statute typically involve crimes with more severe punishment than in the instant case and involve *mala in se.*[5] *See McQueen v. State,* 781 S.W.2d 600 (Tex.Crim.App.1989) (unauthorized use of a motor vehicle); *Haggins v. State,* 785 S.W.2d 827 (Tex.Crim.App.1990) (injury to a child); *McClain v. State,* 687 S.W.2d 350 (Tex.Crim.App.1985) (theft). Section 551.144 is in the nature of a public welfare offense and the proscribed conduct is properly characterized as *malum prohibitum.*[6] Public welfare offenses, like section 551.144, involve neglect where the law requires care, or inaction where it imposes a duty. *Morissette v. United States,* 342 U.S. 246, 256, 72 S.Ct. 240, 246, 96 L.Ed. 288 (1952). Similarly, public welfare offenses typically involve relatively minor punishment, as does section 551.144, and tend to hold persons strictly liable for their conduct. Wayne R. LaFave et al., Substantive Criminal Law § 3.8 (1986) ("[L]egislatures, especially in this century, have often undertaken to impose criminal liability for conduct unaccompanied by fault.").Thus, our holding is consistent with our prior holdings, as it is not uncommon for this type of offense to impose strict liability.

---

5. *Malum in se* is defined as "[a] wrong in itself; an act or case involving illegality from the very nature of the transaction, upon principles of natural, moral, and public law. An act is said to be *malum in se* when it is inherently and essentially evil, that is, immoral in its nature and injurious in its consequences, without any regard to the fact of its being noticed or punished by the law of the state. Such are most or all of the offenses cognizable at common law (without the denouncement of a statute); as murder, larceny, etc." Black's Law Dictionary, Abridged, 494 (5th ed.1983).

6. *Malum prohibitum* is defined as "[a] wrong prohibited; a thing which is wrong *because* prohibited; an act which is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law; an act involving an illegality resulting from positive law." Black's Law Dictionary, Abridged, 494 (5th ed.1983). *cf* footnote 4, *supra.*

Therefore, because we find the meaning of section 551.144 should have been plain to the legislators who voted on it and its application does not lead to absurd results, we give effect to its plain meaning and find it unnecessary to resort to the statute's legislative history. Accordingly, the judgment of the court of appeals is affirmed.

BAIRD, J., filed a concurring opinion.

PRICE, J., filed a concurring opinion in which BAIRD, MEYERS, MANSFIELD and KELLER, JJ., joined.

BAIRD, Judge, concurring.

I join the majority opinion and Judge Price's concurring opinion, but write separately to clarify my position in the instant case and my dissent in *Johnson v. State*, 967 S.W.2d 848, 854 (Tex.Cr.App.1998)(BAIRD, J. dissenting).

In *Johnson,* the defendant admitted committing the crime of indecency with a child because the complaining witness and her friends actively misrepresented her age. *Id.*, 967 S.W.2d at 848. *Johnson* was not a case of mistake of law, but of mistake of fact. Believing this was not the type of situation for which criminal culpability should result, I dissented.

The instant case presents a far different situation. Appellant does not complain that somehow the facts of the meeting were misrepresented to him; he contends he was not aware the closed meeting was impermissible under the Open Meetings Act. Tex. Gov't Code Ann. § 551.144. As Judge Price succinctly stated, "ignorance of the law is no excuse." *Post* at 589; slip op. pg. 3.

I am mindful of the many amici curiae briefs submitted in this cause.[1] Compelling as their arguments may be, the role of this Court is not to legislate, but to interpret the laws as the legislature prescribes them. Tex. Const. Art. II, § 1.[2]

In *State v. Ross,* 953 S.W.2d 748, 751, fn. 4 (Tex.Cr.App.1997), citing *Ex parte Hayward,* 711 S.W.2d 652, 655–56 (Tex.Cr.App.1986), this Court stated:

> We have explained the duty of this Court to refrain from intruding on the legislative realm:
>
> Courts have no power to legislate. It is the court's duty to observe, not to disregard statutory provisions. Courts can neither ignore nor emasculate the statutes. Further, courts have no power to create an exception to a statute, nor do they have power to add to or take from legislative pains, penalties and remedies.... It is for the Legislature, not the courts, to remedy defects or supply deficiencies in the laws, and to give relief from unjust and unwise legislation.

In *Dodd v. State,* supra, 201 S.W. at p. 1018, this Court wrote:

> "The duty of the courts is to observe statutory provisions. It does not lie with them to arbitrarily disobey them. The rights of the public and the citizen are best protected by an observance of the law as it is written where it does not overstep constitutional provisions ...." (citations omitted).

The punishment is harsh in the instant case; however, it is incumbent upon public servants to be aware of the relevant laws. With these comments I join the majority opinion and Judge Price's concurring opinion.

PRICE, Judge, concurring.

I join the opinion of the Court, but write separately to emphasize my reasons for doing so. Appellant was convicted of violating

1. Briefs were submitted on behalf of the following organizations: Texas Association of School Boards, Texas Association of School Administrators, Texas Councilof School Attorneys, Dallas County Hospital District, Texas Municipal League, Dallas County, and the Texas City Attorney's Association.

2. The Constitution provides:
   Sec. 1. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

a penal provision of the Texas Open Meetings Act. TEX. GOV'T CODE ANN. § 551.144 (Vernon 1994), titled "Closed Meeting; Offense; Penalty," provides:

(a) A member of a governmental body commits an offense if a closed meeting is not permitted under this chapter and the member knowingly:

(1) calls or aids in calling or organizing the closed meeting, whether it is a special or called closed meeting;

(2) closes or aids in closing the meeting to the public, if it is a regular meeting; or

(3) participates in the closed meeting, whether it is a regular, special, or called meeting.

(b) An offense under Subsection (a) is a misdemeanor punishable by:

(1) a fine of not less than $100 or more than $500;

(2) confinement in the county jail for not less than one month or more than six months; or

(3) both the fine and confinement.

The Court of Appeals affirmed appellant's conviction. *Tovar v. State,* 949 S.W.2d 370 (Tex.App.-San Antonio 1997, pet.granted). We granted appellant's petition for discretionary review on the following ground: Whether the Court of Appeals erred in affirming the convictions, based upon a conclusion that a public official can be found guilty of violating the Open Meetings Act, when the official is unaware that the meeting is not permitted under the Act.

The first step in this analysis is statutory interpretation. As we have previously stated, when interpreting a statute, we look to the literal text for its meaning, and we ordinarily give effect to that plain meaning. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991). The only exceptions to this rule are where application of the statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, or if the plain language is ambiguous. *Id.*

The text of § 551.144 is unambiguous. The term "knowingly" immediately precedes, and thus modifies, only the following:(1) calling or aiding in calling or organizing the closed meeting, whether it is a special or called closed meeting;(2) closing or aiding in closing the meeting to the public, if it is a regular meeting; or (3) participating in the closed meeting, whether it is a regular, special, or called meeting. Nothing within the statute even remotely appears to address the mental state of the accused with regard to his awareness that the closed meeting was not permitted under the Texas Open Meetings Act. Because § 551.144 includes the mental element "knowing," no additional culpable mental state is required. *See* TEX. PEN.CODE ANN. 6.02(b) (Vernon 1994); *accord Long v. State,* 931 S.W.2d 285, 291 (Tex. Crim.App.1996) (by prescribing mental states in connection with some divisions of a stalking statute, but omitting a mental state in a particular division of that same statute, the legislature plainly dispensed with any additional mental state in the latter which might otherwise be required); *Johnson v. State,* 967 S.W.2d 848, 852 (Tex.Crim.App.1998) (Price, J., concurring) (as to a statute proscribing indecency with a child, by including mental elements that did not modify the age of the victim, the legislature intended to dispense with a culpable mental state as to the victim's age).

There is nothing particularly unusual about this statutory scheme. Appellant is essentially complaining that he was ignorant of the law. But, of course, as the ancient maxim goes, ignorance of the law is no excuse.[1] That is, one of the most basic propositions of the law is that "... knowledge of the law defining the offense is not itself an element of the offense." MODEL PENAL CODE § 2.02 explanatory note on subsection (9) (Official Draft & Revised Comments 1985).[2] Our Penal Code specifically prohibits such a defense, with narrow exceptions not relevant

---

1. BLACK'S LAW DICTIONARY 747 (6th ed.1990); THE OXFORD DICTIONARY OF QUOTATIONS 422 (2nd ed.1955) (attributed to John Selden).

2. *See also* 22 C.J.S. *Criminal Law* § 94 (1989); 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 5.1(d) (1986); 21 Am.Jur.2d *Criminal Law* § 142 (1981); 1 WHARTON'S CRIMINAL LAW § 77 (14th ed.1978).

in the instant case. TEX. PEN.CODE ANN. § 8.03 (Vernon 1994).

The conduct delineated § 551.144, taken together with the requisite mental state, does not necessarily evince a *mens rea* or "criminal intent." In asking this Court to construe § 551.144 so as to require that he was at least reckless with regard to whether the closed meeting was permissible under the Texas Open Meeting Act, appellant is asking us to graft a requirement of "criminal intent" onto the statute. However, given the statute at issue, this is not appropriate.

At first glance, it may seem odd that appellant's conduct was subject to criminal sanctions, without some sort of proof of "criminal intent;" such is not the norm in the realm of criminal law. However, criminal laws which omit the element of "criminal intent" are not completely unknown; such acts are considered "malum prohibitum," [3] as opposed to being "malum in se." [4] Over forty years ago, the Supreme Court characterized the former types of crimes as "public welfare offenses," which it described as " . . . regulations which heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare." *Morissette v. United States,* 342 U.S. 246, 254–255, 72 S.Ct. 240, 245–246, 96 L.Ed. 288 (1952). The list of such statutes is wide and varied,[5] and, like § 551.144, some even carry the possibility of imprisonment.[6] Certainly, given the efforts of our Legislature to ensure public access to open government,[7] § 551.144 can reasonably be characterized as a "public welfare" law. In this context, a literal interpretation of § 551.144 does not lead to an absurd result, and it is not appropriate for this Court to graft onto the statute a requirement of "criminal intent".

---

**3.** A "malum prohibitum" act is defined as "[a] wrong prohibited; a thing which is wrong *because* prohibited; an act which is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law; an act involving an illegality resulting from positive law." BLACK'S LAW DICTIONARY 960.

**4.** A "malum in se" act is defined as "[a] wrong in itself; an act or case involving illegality from the very nature of the transaction, upon principles of natural, moral and public law . . . An act is said to be *malum in se* when it is inherently and essentially evil, that is, immoral in its nature and injurious in its consequences, without any regard to the fact of its being noticed or punished by the law of the state. Such are most or all of the offenses cognizable at common law (without the denouncement of a statute); as murder, larceny, etc." BLACK'S LAW DICTIONARY 959.

**5.** Among the areas that have been covered by such laws are pure food and drug; giving false weight; selling over ceiling prices; minimum wage laws; liquor laws; soliciting insurance for unlicensed insurer; borrowing bank funds by bank officer; receiving mental patients without authorization; possession of counterfeit ration stamps; using another's trademark; purchasing army-issue supplies without authorization; making false statement in shipping declaration; fishing in prohibited area; polluting in streams; entering poll booth with voter without authorization card; possession a machine gun; shooting game birds which have been lured by grain bait; failure to have common carrier permit; possession of lottery slips; owning house used for prostitution; shipping wild game out of state; failure to pay gaming tax; violation of hunting laws; selling margarine; possession of auto with defaced serial numbers; passing school bus stopped for discharging children; driving on wrong side of road; driving without tail light; driving overweight truck; carrying altered passport; shooting domesticated pigeons; cutting timber without authorization; criminal syndicalism; narcotic offenses; blue sky laws; obstructing justice; misleading advertising statements; "unknowingly" possessing explosives under suspicious circumstances; converting public funds by public official; official misfeasance; carrying concealed weapons; voting illegally; using proceeds of securities sales for purposes outside those stated in prospectus; "public officers" misappropriating or mishandling funds; selling liquor wholesale to unauthorized vendee; failing to give notice to respondent in administrative proceeding; publishing without permission accounts relating to conduct of war; transmission of racing results. *See* MODEL PENAL CODE § 2.05 comment.

**6.** *See* MODEL PENAL CODE § 2.05 comment.

**7.** *See* TEX. GOV'T CODE ANN. tit. 5, subtit. A (Vernon 1994 & Supp.1998); *see also Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 300 (Tex.1990) ("The Open Meetings Act was enacted in 1967 for the purpose 'of assuring that the public has the opportunity to be informed concerning the transactions of public business.'") (citing Acts 1967, ch. 271, § 7, 1967 Tex. Gen. Laws 597); *Cox Enters., Inc. v. Bd. of Trustees,* 706 S.W.2d 956, 960 (Tex.1986) ("The [Open Meetings] Act is intended to safeguard the public's interest in knowing the workings of its governmental bodies").

The drafters of the Model Penal Code have expressed skepticism at these types of laws. MODEL PENAL CODE § 2.05 comment. In the instant case, this Court has received several *amicus curiae* briefs urging reversal of appellant's conviction, at least in part on the basis of public policy. Nevertheless, such laws are a staple of modern-day society. Except as subject to constitutional constraints not relevant here,[8] any change to them should come from the Legislature, rather than the courts.

With these comments, I join the Court's opinion.

BAIRD, MEYERS, MANSFIELD and KELLER, JJ., join.

---

8. *See* 21 Am.Jur.2d *Criminal Law* § 138 (1981).