02-10-341-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00341-CR

 

 


 
 
 Karen Chang
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM County
Criminal Court No. 10 OF Tarrant COUNTY

------------

MEMORANDUM
OPINION[1]

------------

I.  Introduction

          In
two issues, Appellant Karen Chang challenges the legal and factual sufficiency
of the evidence to support her conviction for prohibited discharge 
(MS4).[2]  We will affirm.

II.  Factual and Procedural Background

          On
April 16, 2008, Vicki Stokes, a senior environmental specialist with the City
of Fort Worth, and Casey Nettles, an environmental specialist with the City of
Fort Worth, responded to a citizen’s complaint that grease was flowing along
the curb line in front of his house.  Stokes and Nettles ended up in the
parking lot behind the Wan Fu restaurant, where they observed (1) several
open-top, five-gallon buckets containing grease trap waste; (2) a small
amount of absorbent material that had been laid on the ground around the
buckets and around a manhole for a grease trap[3] (the manhole cover had
been removed); (3) several unopened bags of absorbent material; (4) grease
trap waste that had tracked on the ground from the grease trap onto the
street’s curb line; and (5) two wooden barricades apparently intended to divert
traffic away from the grease trap waste in the parking lot.  According to
Stokes, the grease trap waste had traveled a distance of between a tenth and a
quarter of a mile from the grease trap and entered into a gutter.

          Chang
arrived and said that she was the owner of the restaurant and that its grease
trap had overflowed the previous day, April 15, 2008.  She had instructed her
employees to scoop up grease from the overflowing trap and to put it into the
buckets, and she had also purchased and had her employees lay out absorbent
material to soak up grease trap waste.  Rescue Rooter assessed the grease
trap’s condition on April 15, 2008, but did not repair the problem—a clogged
pipe—until the following day.  Chang knew that the pipe was backed up and had
not been repaired and that grease trap waste was leaking to the curb line, but she
continued to operate the restaurant between 8:00 p.m. and 10:00 p.m.  The
restaurant sent water down the drain and cleaned its cooking vats.  Rescue
Rooter told Stokes that the clogged line belonged to the Wan Fu restaurant.  Stokes
issued a citation to Chang for “discharge of non-stormwater (grease trap waste)
to the City’s storm drain system.”

          Chang
waived her right to a jury trial, pleaded not guilty, and proceeded to a bench trial
in the municipal court.  The trial court found Chang guilty and ordered her to
pay a fine and court costs in the amount of $1,564.  Chang appealed to the
county criminal court, which affirmed the trial court’s judgment.  See
Tex. Gov’t Code Ann. § 30.00014(a) (Vernon Supp. 2010).  Chang appeals.  See
id. § 30.00027(a) (Vernon 2004).

III.  Standard of
Review

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge
of the weight and credibility of the evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus,
when performing an evidentiary sufficiency review, we may not re-evaluate the
weight and credibility of the evidence and substitute our judgment for that of
the factfinder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007).  Instead, we Adetermine whether the
necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.@  Hooper
v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

          The
standard of review is the same for direct and circumstantial evidence cases;
circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor.  Clayton, 235 S.W.3d at 778; Hooper, 214
S.W.3d at 13.  In determining the sufficiency of the evidence to show an
appellant=s intent, and faced with a record that
supports conflicting inferences, we Amust
presume—even if it does not affirmatively appear in the record—that the trier
of fact resolved any such conflict in favor of the prosecution, and must defer
to that resolution.@  Matson v. State,
819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

IV.  Evidentiary Sufficiency

          Section
12.5-302 of Fort Worth’s municipal code of ordinances, titled “Discharge to MS4
prohibited,” states that “[a] person commits an offense if the person
introduces or causes to be introduced into the MS4 any discharge that is not
composed entirely of stormwater.”  Fort Worth, Tex., Code of Ordinances ch.
12.5, art. III, div. 1, § 12.5-302 (2010).  “Municipal Separate Storm Sewer
System (MS4)” means “the system of conveyances (including . . . municipal
streets, . . . curbs, [and] gutters, . . . ) owned and operated by the city and
designed or used for collecting or conveying stormwater, and which is not used
for collecting or conveying sewage.”  Id. § 12.5-300.  Therefore,
for purposes of section 12.5-302, the curb line is included within the meaning
of MS4.

          The
complaint alleged that Chang “[d]id then and there unlawfully, knowingly
discharge or introduce into the Lake Worth watershed, a pollutant/polluted
water, contrary to city ordinances.”  Chang challenges the sufficiency of the
evidence to show that she knowingly discharged grease trap waste into the MS4.

          The
penal code delineates three “conduct elements” that may be involved in an
offense:  (1) the nature of the conduct; (2) the
result of the conduct; and (3) the circumstances of the conduct.  See
Tex. Penal Code Ann. § 6.03(b) (Vernon 2003); McQueen v. State, 781
S.W.2d 600, 603 (Tex. Crim. App. 1989).  A result oriented offense, such as
homicide, criminalizes unspecified conduct based upon the result of the
action.  McQueen, 781 S.W.2d at 603; Tovar v. State, 949 S.W.2d
370, 372 (Tex. App.—San Antonio 1997), aff’d, 978 S.W.2d 584 (Tex. Crim.
App. 1998).  When a specific act is criminalized because of its very nature, such
as gambling, a culpable mental state applies to committing the act itself and,
therefore, the offense is nature oriented.  Herrera v. State, 915 S.W.2d
94, 97 (Tex. App.—San Antonio 1996, no writ).  Section 12.5-302 criminalizes the
act of discharging or introducing into the MS4 any discharge that is not
composed entirely of stormwater.  Accordingly, the offense described in section
12.5-302 is a “nature of the conduct” offense.  See, e.g., Slott v. State,
148 S.W.3d 624, 632 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d)
(reasoning that storage or disposal of waste is a “nature of conduct” offense);
L.B. Foster Co. v. State, 106 S.W.3d 194, 211 (Tex. App.—Houston [1st
Dist.] 2003, pet. ref’d) (reasoning that illegal disposal of used oil was a
“nature of conduct” and “circumstances of conduct” offense because person must
act knowingly with respect to both the nature of his conduct—the disposal—and
the circumstances of his conduct—that used oil was disposed of).

          Penal
code section 6.03(b) provides that “[a] person acts knowingly, or with
knowledge, with respect to the nature of his conduct or to circumstances
surrounding his conduct when he is aware of the nature of his conduct or that
the circumstances exist.”  Tex. Penal Code Ann. § 6.03(b).  “Knowingly”
means that the defendant knows factually what he is doing.  Slott, 148
S.W.3d at 632–33.

          Stokes
testified that she visited the Wan Fu restaurant approximately five months
before the April 2008 incident because grease trap waste had overflowed from
the grease trap and traveled down the street and into a storm drain.  She
recounted that it looked like the restaurant had tried to wash the grease trap waste
away by using water but that it ultimately “create[d] more of a mess.”  Another
city employee, Inspector Ramirez, explained to Chang that, in the event there was
another grease trap overflow, she should use absorbent material to prevent the
grease trap waste from running off of the property.  Stokes said that city
employees stressed to Chang the importance of ensuring that grease trap waste
did not reach the curb line.[4]

          When
Stokes arrived at the Wan Fu restaurant on April 16, 2008, she observed
multiple five-gallon buckets full of grease trap waste, a small amount of
absorbent on the ground around the grease trap’s manhole, and several unopened
bags of absorbent material.  Stokes testified that an insufficient amount of absorbent
material was used to prevent the grease trap waste, which had run a
“significant distance down to residential streets,” from contacting the curb
line.

          Chang
testified that she knew the grease trap overflowed on April 15, 2008, and that
she had asked her employees to scoop up waste and to put it into buckets.  She
knew that Rescue Rooter had not repaired the clogged line on April 15, 2008,
but she continued operating the restaurant between 8:00 p.m. and 10:00 p.m. 
Chang testified that she put down some absorbent material but that it did not
keep the grease trap waste from contacting the curb.  Chang acknowledged that
“probably a little bit” of grease trap waste had contacted the curb.

          The
evidence thus demonstrates (1) that Chang knew that grease trap waste
overflowing from the grease trap could contact the curb line; (2) that
Chang knew that using sufficient amounts of absorbent material would prevent
overflowing grease trap waste from contacting the curb line; (3) that Chang
knew that the grease trap had overflowed due to a clogged pipe on April 15,
2008; (4) that Chang instructed her employees to scoop up grease trap
waste and to put it into buckets instead of setting out a sufficient amount of absorbent
material to absorb the grease trap waste and to halt the flow of the waste onto
the curb line; and (5) that Chang continued to operate the
restaurant—sending water down the drain and cleaning vats—knowing that the clogged
pipe had not been repaired and that grease trap waste had leaked to the curb
line.  Accordingly, viewing all of the evidence in the light most favorable to
the prosecution, we hold that the trial court could have found beyond a
reasonable doubt that Chang knowingly discharged or introduced grease trap
waste into the Lake Worth watershed, contrary to city ordinances.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The
evidence is sufficient to support Chang’s conviction under section 12.5-302.  Accordingly,
we overrule Chang’s two issues.

V.  Conclusion

          Having
overruled Chang’s two issues, we affirm the county criminal court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
GARDNER,
MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 17, 2011









[1]See Tex. R. App. P. 47.4.





[2]The court of criminal
appeals has held that there is “no meaningful distinction between the Jackson
v. Virginia legal-sufficiency standard and the Clewis
factual-sufficiency standard” and that “the Jackson v. Virginia standard
is the only standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal offense that
the State is required to prove beyond a reasonable doubt.  All other cases to
the contrary, including Clewis, are overruled.”  See Brooks v.
State, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010).  Therefore, we will
apply the same standard of review to both of Chang’s sufficiency complaints.





[3]Stokes described the
grease trap as a “giant underground tank.”





[4]Stokes did not issue Chang
a citation for this incident.